UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 3:15-CR-107 |
| | ) | |
| RICHARD J. CORBETT, III | ) | |

## **MEMORANDUM AND ORDER**

Now before the Court is the defendant's counseled "Second Motion for Reconsideration of Defendant's Motion for Expedited Compassionate Release." [Doc. 1392].[1] The Court construes the present motion as a renewed request for compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i), an approach with which the United States does not disagree. [Doc. 1395, p. 1].

The United States has responded in opposition to the motion [docs. 1395, 1396], and the defendant has not replied within the time allowed by this Court's Local Rules. For the reasons that follow, the defendant's motion will be denied.

### I. BACKGROUND

In March 2016, the Honorable Thomas W. Phillips sentenced the defendant to a 92-month term of imprisonment for conspiring to distribute methamphetamine. The defendant is presently housed at FCI Fort Dix with a scheduled release date of January 5, 2023. *See* Bureau of Prisons, https://www.bop.gov/inmateloc/ (last visited July 14, 2021). He moves for compassionate release due to the COVID-19 pandemic, hepatitis C, hypertension,

---

[1] A prior *pro se* motion for compassionate release [doc. 1326] and a prior counseled motion for reconsideration [doc. 1362] were each denied for failure to exhaust administrative remedies. [Docs. 1358, 1363].

obesity, "chronic mental health problems," "athletic asthma," and to serve as caregiver for his father. [Docs. 1392, 1362, 1326].

## II. COMPASSIONATE RELEASE

Section 3582(c)(1)(A)(i) of Title 18, United States Code, allows district courts to consider prisoner motions for sentence reduction upon a finding of "extraordinary and compelling reasons." That statute, as amended by the First Step Act of 2018, provides in relevant part:

> [T]he court, upon motion of the Director of the Bureau of Prisons ["BOP"], or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> (i) extraordinary and compelling reasons warrant such a reduction ... and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission....

18 U.S.C. § 3582(c)(1)(A)(i). Prior to the First Step Act, a motion for compassionate release could only be brought by the BOP Director, not a defendant. *See* 18 U.S.C. § 3582(c)(1)(A) (2017). The First Step Act amended § 3582(c)(1)(A) to allow a defendant to file a motion for compassionate release after first asking the BOP to file such a motion on his behalf. *See, e.g., United States v. Alam*, 960 F.3d 831, 832 (6th Cir. 2020).

The United States Sentencing Commission has promulgated a policy statement regarding compassionate release under § 3582(c), which is found at U.S.S.G. § 1B1.13 and the accompanying application notes. District courts in this circuit have previously turned

to U.S.S.G. § 1B1.13 to provide guidance on the "extraordinary and compelling reasons" that may warrant a sentence reduction but are no longer to do so, at least as to compassionate release motions filed by defendants (rather than by the BOP). *See United States v. Jones*, 980 F.3d 1098, 1108 (6th Cir. 2020) ("[H]olding" that guideline 1B1.13 "is not an 'applicable' policy statement when an imprisoned person files a motion for compassionate release."); *accord United States v. Elias*, 984 F.3d 516 (6th Cir. 2021).[2] "District courts should [still] consider all relevant § 3553(a) factors before rendering a compassionate release decision." *Jones*, 980 F.3d at 1114.

### A. Exhaustion

The United States concedes that the defendant has now previously submitted a compassionate release request to the BOP, and more than 30 days have passed since that request was received by the warden. [Doc. 1395, p. 1]. The Court thus has authority under § 3582(c)(1)(A) to address the instant motion. *See Alam*, 960 F.3d at 832.

### B. Merits

As mentioned above, in support of his motion the defendant (age 33) cites the COVID-19 pandemic, hepatitis C, hypertension, obesity, "chronic mental health problems," "athletic asthma," and a desire to serve as caregiver for his disabled father.

At the defendant's correctional institution, there are currently no inmates or staff positive for COVID-19, with 1,729 inmates and 95 staff having recovered, and two inmate deaths. *See* Bureau of Prisons, https://www.bop.gov/coronavirus/ (last visited July 14, 2021). These numbers are historically significant, but the Court simultaneously notes that

---

[2] The parties in this case have not addressed any guideline policy statement other than § 1B1.13.

outside the prison setting our nation remains on alert in terms of COVID diagnoses, hospitalizations, deaths, emerging variants, and grossly inadequate vaccination rates. Further, the COVID-19 pandemic cannot alone justify compassionate release. *See, e.g., United States v. Shah*, No. 16-20457, 2020 WL 1934930, at *2 (E.D. Mich. April 22, 2020) ("[S]peculation as to whether COVID-19 will spread through Defendant's detention facility . . . , whether Defendant will contract COVID-19, and whether he will develop serious complications, does not justify the extreme remedy of compassionate release."); *see also United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release[.]").

Additionally, the BOP's vaccination efforts are underway, with 254 staff and 1,689 inmates having been fully vaccinated at the defendant's prison. *See* Bureau of Prisons, https://www.bop.gov/coronavirus/ (last visited July 14, 2021). In fact, the defendant himself has been fully vaccinated as of February 10, 2021 [doc. 1396], although it appears that he subsequently contracted (and recovered from) the virus. [Doc. 1395, ex. 1].

BOP medical records submitted by the defendant confirm that he has been diagnosed with, and receives treatment for, hypertension. [Doc. 1326, ex. 2]. As of November 2019 (the most recent pertinent record presented to the Court), no cardiac complaints or abnormalities were noted. [*Id.*]. Records from that same date provide that the defendant's hepatitis C is "resolved." [*Id.*]. A history of depression, anxiety, ADHD, and an alleged suicide attempt are noted. [*Id.*]. The defendant is a former smoker. [*Id.*]. The Court does not find, nor has the defendant cited the Court to, any diagnosis of "athletic asthma." [*Id.*].

BOP medical records list the defendant's Body Mass Index ("BMI") as ranging between 29.8 and 31.2. [*Id.*]. *See* Adult BMI Calculator, https://www.cdc.gov/healthyweight/assessing/bmi/adult_bmi/english_bmi_calculator/bmi_calculator.html (last visited July 14, 2021). Persons with a BMI of 30 or greater are considered obese, and persons with a BMI of at least 25 but less than 30 are deemed overweight. *Id.*

The BOP's SENTRY Report shows that the defendant is categorized as Care Level 2 in terms of his physical health. "Care Level 2 inmates are stable outpatients who require clinician evaluations monthly to every 6 months. Their medical . . . conditions can be managed through routine, regularly scheduled appointments with clinicians for monitoring. Enhanced medical resources, such as consultation or evaluation by medical specialists, may be required from time to time." *See* http://www.bop.gov/resources/pdfs/care_level_classification_guide.pdf (last visited July 14, 2021). As to his mental health, the defendant is categorized as Care Level 1. "Care Level 1 inmates are less than 70 years of age and are generally healthy. They may have limited medical needs that can be easily managed by clinician evaluations every 6 to 12 months." *See id.*

Hypertension, obesity or being overweight, and status as a former smoker are all factors which "can" create an increased risk of severe illness from COVID-19. *See* People with Certain Medical Conditions, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited July 14, 2021). Nonetheless, the evidence presented in this

5

case does not show that these factors presently impact the instant defendant's health in a significant way such as to render *him* particularly vulnerable to serious complications or death from COVID-19.  Further, the defendant is now fully vaccinated against the virus, thereby significantly reducing his odds of serious complications.  Although it appears that he contracted COVID-19 post-vaccination, the meager evidence on that issue states that he is fully recovered.

The defendant's mental health issues do not appear to be unusually severe.  He receives treatment from the BOP, and he is deemed to be only a Care Level 1.  It is not at all uncommon for this Court to impose a prison sentence on persons with mental health issues.  Sadly, it is equally common for this Court to impose a prison sentence on persons who have vulnerable family members.  Even if that were not the case, the defendant's father's health issues are not documented, and there is no showing that other means of care are unavailable.

The Court has considered the defendant's arguments, individually and in combination, and concludes that he has not met his burden of demonstrating extraordinary and compelling grounds for compassionate release.  For that reason alone, the instant motion must be denied.

Additionally, compassionate release in this case would not be consistent with the 18 U.S.C. § 3553(a) factors.  Consistent with § 3582 and the Sixth Circuit's holding in *Jones*, this Court has considered the defendant's arguments, along with the broader facts of this case, in light of the pertinent § 3553(a) factors.  Pursuant to 18 U.S.C. § 3553(a),

The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider –

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed—

    (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

    (B) to afford adequate deterrence to criminal conduct;

    (C) to protect the public from further crimes of the defendant; and

    (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range established for—

    (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines—

        (i) issued by the Sentencing Commission pursuant to section 994(a)(1) of title 28, United States Code, subject to any amendments made to such guidelines by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and

        (ii) that, except as provided in section 3742(g), are in effect on the date the defendant is sentenced; . . .

    . . .

(5) any pertinent policy statement—

    (A) issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28, United States Code, subject to any amendments made to such policy statement by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and

(B) that, except as provided in section 3742(g), is in effect on the date the defendant is sentenced.

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

In this case, the defendant participated in a large-scale methamphetamine conspiracy for well over three years, thereby causing incalculable harm to his community. [Presentence Investigation Report, doc. 652, ¶ 41]. He made, and helped fund, out-of-state trips to acquire methamphetamine which he and others then distributed. [*Id.*, ¶¶ 42-51]. At least twice in this case the defendant was apprehended in possession of both methamphetamine residue and a firearm, and on one of those occasions he had admittedly "just been released from prison on an intent to manufacture methamphetamine conviction." [*Id.*, ¶¶ 48, 52]. The defendant's participation in the instant conspiracy was so significant that he agreed to a money judgment in the amount of $1,000,000.00. [*Id.*, ¶ 55].

There are juvenile convictions for providing alcohol and marijuana to minors, including at least one eighth grader on six occasions. [*Id.*, ¶¶ 111, 112]. There are adult convictions for theft, controlled substance offenses, and criminal impersonation. [*Id.*, ¶¶ 118, 121-122]. Bond has been previously revoked, and the defendant committed the instant offense while on probation. [*Id.*, ¶¶ 122, 124]. There have been numerous driving and public intoxication convictions, further evidencing a disregard for the law and for the safety of others. [*Id.*, ¶¶ 113-117, 119-120]. Additionally, the defendant's polysubstance abuse began at age 14 and continued to the date of his arrest in this case. [*Id.*, ¶ 138].

The defendant's conduct has not improved post-sentencing. According to SENTRY, he has received five disciplinary sanctions during his current term of imprisonment, for possession of an unauthorized item, insolence to staff (twice), drug use, and disruption of mail monitoring. [Doc. 1395, ex. 3]. Incredibly, two of those events occurred *after* the defendant first sought compassionate release in this Court. [*Id.*]. According to SENTRY, the BOP considers him as having a high risk of recidivism. [*Id.*, ex. 1]. SENTRY further indicates that the defendant has declined residential drug treatment. [*Id.*].

It appears that the defendant is taking some community college coursework, and for that he is commended. Nonetheless, compassionate release on the facts of this case would not reflect the seriousness of the offense of conviction and the defendant's broader criminal history, would not promote respect for the law or provide just punishment, and would not afford adequate deterrence or protect the public from future crimes of this defendant. Although less than 18 months of actual time remains on the defendant's sentence, that time must be served for further deterrence and further protection of the public.

### III. CONCLUSION

As provided herein, the defendant's renewed motion for compassionate release [doc. 1392] is **DENIED**.

**IT IS SO ORDERED.**

ENTER:

s/ Leon Jordan
United States District Judge